IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

TRINIDAD BALDERAS,

              Petitioner,

      v.

H.L. RAY,

              Respondent.

CIVIL ACTION NO.: 2:25-cv-77

## ORDER AND REPORT AND RECOMMENDATION

Petitioner Trinidad Balderas ("Balderas"), who was incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus.  Doc. 1.  Respondent filed a Motion to Dismiss Balderas's Petition, and Balderas filed a Response.  Docs. 7, 9.  For the following reasons, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Respondent's Motion to Dismiss and **DISMISS without prejudice** Balderas's Petition, as supplemented, based on his failure to exhaust his administrative remedies. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Balderas *in forma pauperis* status on appeal.  I **GRANT** Balderas's Motion to Supplement, doc. 11.

## BACKGROUND

Balderas was convicted in the District Court for the Eastern District of Tennessee of conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1).  Doc. 7-1 at 10.  Balderas was sentenced to 135 months in prison. Balderas has a statutory release date of March 27, 2029, via good conduct release, and a

projected release date of March 27, 2028, via First Step Act ("FSA") release.  Id.  He has a home detention eligibility date of September 27, 2028.  Id.  It appears that Balderas is now at a residential reentry center.  Doc. 15.

In his Petition, Balderas asserts that the Bureau of Prisons ("BOP") has incorrectly calculated his credits under the FSA, in accordance with the clear language of 18 U.S.C. § 3624(g), and resulting in his over-detention.  Doc. 1 at 18, 19.  Balderas also states that he is entitled to credits under the Second Chance Act ("SCA").  Id. at 21.  Balderas asks that the Court order the BOP to recalculate his risk assessment and the credit he is due.  Id. at 20–21.

Respondent asks this Court to dismiss Balderas's Petition because Balderas failed to exhaust his administrative remedies regarding the claims he raises in this Petition.  Doc. 7 at 3–5.  Respondent states Balderas has no liberty interest in FSA credits.  Id. at 5–7.  Respondent also states that this Court lacks jurisdiction under the Administrative Procedures Act to review Balderas's FSA claims and that this Court cannot determine Balderas's place of confinement.  Id. at 7–12.  Respondent also states that other courts have determined that there is no statutory mandate to transfer an eligible prisoner to pre-release custody as soon as he becomes eligible.  Id. at 12.  In addition, Respondent contends that Balderas's risk assessment and credits have been properly calculated.  Id. at 13–17.

## DISCUSSION

I.    **Respondent Fails to Show That This Court Lacks Jurisdiction Under the APA to Review Balderas's Claim**

Balderas contends that the FSA provides that time credits "'shall be applied toward time in prerelease custody or supervised release' and the BOP 'shall transfer eligible prisoners . . . into prerelease custody or supervised release."  Doc. 1 at 2 (citing 18 U.S.C. § 3632(d)(4)(C)).  Balderas also contends that the FSA requires that these credits be applied toward pre-release

2

custody or supervised release since the word "shall" is used in 18 U.S.C. § 3632(d)(4)(A). Id. In addition, "a prisoner is deemed 'eligible' for pre[-]release custody if he has earned sufficient earned time credits." Id. at 8 (citing 18 U.S.C. § 3624(g)(1)). Balderas maintains that the BOP is required to transfer an eligible prisoner for placement at a halfway house or on home confinement. Id. at 10.

Respondent maintains that the Administrative Procedures Act ("APA") bars this Court's review of Balderas's claims. Doc. 7 at 7. Respondent asserts that the BOP has the discretion to designate the place of a prisoner's incarceration. Id. at 2, 11. Respondent also states that nothing in the FSA alters the BOP's authority to make placement determinations. Id. at 10. Respondent characterizes Balderas's claim as being a complaint about the location at which the BOP has chosen to place him, yet he fails to cite any authority allowing this Court to order his immediate RRC placement contrary to the BOP's decision. Id. at 6–7.

Balderas responds that this Court has jurisdiction under § 2241 because he is challenging the execution of his sentence. Doc. 9 at 5. He also states that the FSA mandates that his earned credits be applied to pre-release custody or supervised release and the BOP's refusal to apply his credits and provide him with RRC placement is not a discretionary decision; rather, Balderas asserts the BOP's refusal to comply with the FSA is in violation of §§ 3624(g) and 3632(d)(4)(C). Id. at 4–6.

Under the APA, a petitioner may use habeas corpus to challenge a BOP action. See 5 U.S.C. § 703. However, in 18 U.S.C. § 3625, Congress specified the provisions of the APA governing judicial review, §§ 701–06, were inapplicable to "the making of any determination, decision, or order under" any provision of 18 U.S.C. §§ 3621 to 3626. The Eleventh Circuit has explained § 3625 expressly precludes judicial review of agency adjudicative decisions but not

3

rulemaking decisions, and courts generally lack jurisdiction because of § 3625 even in a § 2241

habeas action.  Cook v. Wiley, 208 F.3d 1314, 1319 (11th Cir. 2000); see also Reeb v. Thomas,

636 F.3d 1224, 1227 (9th Cir. 2011) ("To find that prisoners can bring habeas petitions under 28

U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to [Title 18,

Chapter 229, Subchapter C] would be inconsistent with the language of 18 U.S.C. § 3625.");

Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998) ("[I]t is apparent that § 3625 precludes

judicial review of agency adjudicative decisions but not of rulemaking decisions.").  Where

Congress precludes judicial review of an agency decision by statute, judicial review of that

decision is limited to whether the agency acted outside its statutory limits or violated the

Constitution.  See Webster v. Doe, 486 U.S. 592, 597, 603 (1988); Santiago-Lebron v. Fla.

Parole Comm'n, 767 F. Supp. 2d 1340, 1351 (S.D. Fla. 2011); Paradis v. Keller, 2011 WL

2790480, *4 n.3 (N.D. Ga. June 13, 2011); Klatch v. Rathman, No. 1:13-CV-01452, 2014 WL

537021, at *11 (N.D. Ala. Feb. 10, 2014); see also Rodriguez v. Johns, Civil Action No. 5:17-cv-

134, 2018 WL 4102854, at *2–3 (S.D. Ga. July 26, 2018), adopted by, 2018 WL 4100695 (S.D.

Ga. Aug. 28, 2018).

Respondent has missed the crux of Balderas's argument.[1]  Balderas has precisely defined

his claim by stating that the BOP is not following the language of § 3624(g)(2), i.e., the BOP is

not applying the mandatory "shall" of this statute (eligible prisoners "shall" be placed in

prerelease custody); see also 18 U.S.C. § 3632(d)(4) (eligible prisoner "shall" earn time credits).

Accordingly, Balderas's claim is one that falls outside of the BOP's discretionary acts and is,

---

[1]    Through his Motion to Supplement, Balderas asks the Court to accept his updated FSA risk
assessment sheet and to supplement the record.  Doc. 11 at 1–2.  To the extent Balderas is asking the
Court to review that risk assessment sheet and its alleged implication on his Petition, it appears the Court
would lack jurisdiction to entertain any such claim.  This Court only has jurisdiction to review Balderas's
claim that the BOP is not following mandatory statutory language, as noted.

therefore, subject to judicial review.  Torres v. Jenkins, Civil Action No. 1:23-cv-2885, 2024 WL 6473642, at *3 (N.D. Ga. May 1, 2024) (recognizing § 3625 precludes judicial review of the BOP's discretionary determinations but noting the Eleventh Circuit has indicated a court can review a petitioner's claim that the BOP's interpretation of a statute is unreasonable and constitutional claims, despite the language of § 3625); see also Briones-Pereyra v. Warden, Case No. 1:23-cv-01718, 2024 WL 4141380, at *2 (E.D. Cal. Sept. 12, 2024) ("Although a district court has no jurisdiction over discretionary designation decisions, it does have jurisdiction to decide whether the [BOP] acted contrary to established federal law, violated the Constitution, or *exceeded its statutory authority* when it acted pursuant to 18 U.S.C. § 3621." (emphasis in original) (quoting Rodriguez v. Copenhaver, 823 F.3d 1238, 1242 (9th Cir. 2016)); Woodley v. Warden, USP Leavenworth, Case No. 24-3053, 2024 WL 2260904, at *2–4 (D. Kan. May 15, 2024) (reviewing relative merits of petitioner's FSA claims under §§ 3624 and 3632 without mention of APA).

To be sure, Balderas's contention is more than a simple request that he be placed in a specific location.[2]  Instead, Balderas contends that the BOP has not followed the mandatory language of the FSA and, as a result, he has not been placed in pre-release custody, as § 3624(g) and § 3632 require, even though he is "eligible" for RRC placement.  See Woodley, 2024 WL 2260904, at *4 (noting, while the FSA requires transfer to pre-release custody for eligible prisoners, the BOP retains the discretion to decide the particular placement or facility); Williams v. Warden, FCI Berlin, 793 F. Supp. 3d 412, 418–19 (D.N.H. 2025) (citing Woodley favorably

---

[2]     Respondent is correct that the Court does not have jurisdiction under the APA to review the specific location of a prisoner's incarceration.  However, as noted, this is not at all what Balderas's claim is.

for the position the BOP does not have discretion to delay or refuse transfer of an eligible prisoner to pre-release custody).

Because Respondent has not shown that the APA precludes judicial review of Balderas's claim, the Court should **DENY** this portion of Respondent's Motion.  However, as discussed in the following Section, Balderas did not exhaust his available administrative remedies prior to filing his Petition, even though the BOP could provide his requested relief.[3]

## II.      Balderas Did Not Exhaust His Available Administrative Remedies

Respondent asserts that Balderas has not fully or properly exhaust his administrative remedies, as he failed to successfully exhaust at the BP-10 and BP-11 levels (Regional and Central Office, respectively).  Id. at 4.  While Balderas has filed five administrative remedies related to the claims he raises in his Petition, Respondent asserts Balderas has only successfully filed at the BP-9 level (Warden or institutional).  Because Balderas failed to complete this process, Respondent asserts his Petition should be dismissed.  Id.

Balderas states exhaustion is not required when it would be futile to pursue any remedies. Doc. 1 at 16.  Specifically, Balderas contends it would be futile for him to exhaust his administrative remedies because he would have already been transferred to pre-release custody, so making him exhaust would cause irreparable harm.[4]  Id. at 17.  In response to the Motion to Dismiss, Balderas contends he made multiple, good faith attempts to exhaust his administrative

---

[3]      Because Balderas did not exhaust his administrative remedies, the Court declines to wade into whether the BOP correctly applied his credits or the relevant statutes or whether Balderas has a protected liberty interest in earned time credits.  The Court has discussed the APA only to show that the APA does not bar this Court's review of Balderas's claims.

[4]      It appears that Balderas has been placed in a residential re-entry center.  Doc. 15.  If so, Balderas's Petition may be moot, at least in part.  Respondent has not, however, argued that the Petition is moot.

remedies, but his efforts were "improperly blocked at every level[,]" rendering the remedies process unavailable.  Doc. 9 at 1–2.

Liberally construing his assertions, Balderas is arguing that he should be excused from exhausting administrative remedies for two reasons.  First, Balderas argues that the BOP's actions rendered the administrative remedies process unavailable.  Second, Balderas argues that requiring exhaustion is futile because he has been made to serve a longer sentence than required before he could be transferred to pre-release custody.  The Court addresses each argument.

### A.    Generally, a Petitioner Must Fully Exhaust All Available Administrative Remedies Before Filing a § 2241 Petition

The Eleventh Circuit Court of Appeals has held a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect.  Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional.").  Nevertheless, the Eleventh Circuit has noted "the exhaustion requirement [is] still a requirement and that courts cannot 'disregard a failure to exhaust . . . .'"  Fleming, 631 F. App'x at 842 (citing Santiago-Lugo v. Warden, 785 F.3d 467, 475 (11th Cir. 2015)).

Exhaustion of administrative remedies must occur first in the agency setting to allow "the agency [to] develop the necessary factual background upon which decisions should be based" and to give "the agency a chance to discover and correct its own errors."  Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)).  Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of

prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[5]

The United States Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

The Eleventh Circuit has explained—though only in an unpublished opinion—that a § 2241 petitioner need only exhaust "available" administrative remedies. Blevins v. FCI Hazelton Warden, 819 F. App'x 853, 856 (11th Cir. 2020) (citing Ross v. Blake, 578 U.S. 632 (2016)). As a result, a petitioner need not exhaust administrative remedies:

> (1) where despite what regulations or guidance materials may promise, the administrative process operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates, (2) where the administrative process is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it, and (3) where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

Id. (cleaned up); see also Parra-Orona v. Jenkins, No. 1:23-CV-2434, 2024 WL 6083897, at *2 (N.D. Ga. Jan. 16, 2024) (citing Blevins and evaluating the unavailability of administrative remedies in the § 2241 context), adopted by, 2024 WL 6083898 (N.D. Ga. Mar. 26, 2024); Ridling v. Yeager, No. 1:24-CV-01785, 2025 WL 1892707, at *3 (N.D. Ala. June 13, 2025) (same), adopted by, 2025 WL 1885636 (N.D. Ala. July 8, 2025).

---

[5] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

Although a petitioner must ordinarily exhaust administrative remedies before filing a § 2241 petition, there are some circumstances where exhaustion may be excused.  In McCarthy v. Madigan, the Supreme Court recognized "three broad sets of circumstances" that may justify excusing a claimant from exhausting administrative remedies: (1) when "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action"; (2) when there is "some doubt as to whether the agency was empowered to grant effective relief"; and (3) when "the administrative body is shown to be biased or has otherwise predetermined the issue before it . . . ."  503 U.S. 140, 146–48 (1992) (internal quotation marks omitted), superseded by statute, 42 U.S.C. § 1997e(a).  The Eleventh Circuit has not spoken directly on whether exhaustion can be excused in the § 2241 context under the three McCarthy circumstances, but in an unpublished opinion, has suggested it can be.  See Shorter v. Warden, 803 F. App'x 332, 336 (11th Cir. 2020) (suggesting McCarthy should be applied to § 2241 petitions).  District courts in this Circuit have similarly applied McCarthy in the § 2241 context. See, e.g., Wilson v. Sawyer, No. 4:20-CV-00326, 2020 WL 7346550, at *2 (N.D. Fla. Nov. 13, 2020), adopted by, 2020 WL 7342656 (N.D. Fla. Dec. 14, 2020); Robelo-Galo v. Janson, No. 1:24-CV-00931, 2025 WL 2093409, at *1 (N.D. Ga. Feb. 24, 2025), adopted by, 2025 WL 2093406 (N.D. Ga. Mar. 14, 2025).

There is some uncertainty about whether there is a "futility" exception to the exhaustion requirement for § 2241 petitioners.  See Zapata-Molina v. Stone, No. CV 321-013, 2021 WL 2670725, at *2 (S.D. Ga. June 1, 2021) (noting it is unclear whether a futility exception exists in the § 2241 context), adopted by, 2021 WL 2673670 (S.D. Ga. June 29, 2021).  McCarthy itself suggests that the second and third circumstances identified in that case encompass futility. See McCarthy, 503 U.S. at 148 (noting that where an agency is not empowered to grant effective

relief, seeking application for administrative relief may be "utterly futile" and that where a decisionmaker has already concluded rules were valid, seeking administrative remedies that would present same challenge to the same decisionmaker would be a "futile act").  Additionally, in Shorter, the Eleventh Circuit suggested that the petitioner's futility argument related to one of the three McCarthy circumstances.  803 F. App'x 336.  District courts applying McCarthy have also recognized that the McCarthy circumstances likely encompass some futility exception.  See, e.g., Jones v. Zenk, 495 F. Supp. 2d 1289, 1299–1300 (N.D. Ga. 2007) ("[T]he exceptions recognized in McCarthy, including the futility exception, apply to the exhaustion requirement in § 2241 cases."); Robelo-Galo, 2025 WL 2093409, at *2.

Thus, to the extent a petitioner demonstrates futility by showing the existence of one of the three circumstances described in McCarthy, a court may excuse the exhaustion requirement.  There does not, however, appear to be any separate, independent futility exception, outside of the three McCarthy circumstances.[6]  Where a petitioner relies on futility, the petitioner has the burden to demonstrate futility and "extraordinary circumstances."  Jaimes v. United States, 168 F. App'x 356, 359 & n.4 (11th Cir. 2006).  The Eleventh Circuit has noted "a petitioner need not exhaust his administrative remedies 'where the administrative remedy will not provide relief

---

[6]   In McGee v. Warden, FDC Miami, the Eleventh Circuit expressly concluded that there is no futility exception to the exhaustion requirement for § 2241 petitions.  487 F. App'x 516, 518 (11th Cir. 2012).  However, that conclusion was based on a view that exhaustion was a jurisdictional requirement, which was later rejected.  Therefore, the conclusion about a futility requirement expressed in McGee is likely no longer correct.  See Straughter v. Warden, FCC Coleman-Low, 699 F. Supp. 3d 1304, 1308 (M.D. Fla. 2023) (explaining that the conclusion in McGee likely did not survive Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015)).

Some courts have continued to state there is no futility exception to the exhaustion requirement for § 2241 petitioners.  See, e.g., Martinez-Palmero v. Jenkins, No. 1:23-CV-2763, 2023 WL 12119160, at *2 (N.D. Ga. Nov. 17, 2023), adopted by, 2024 WL 6081629 (N.D. Ga. Feb. 27, 2024); Moore v. Colon, No. 20-22032, 2020 WL 5868179, at *4 (S.D. Fla. July 27, 2020), adopted by, 2020 WL 5848687 (S.D. Fla. Sept. 30, 2020).  However, that view appears to be largely based on the language in McGee, which, after Santiago-Lupo, is likely no longer binding.

commensurate with the claim.'"  Boz v. United States, 248 F.3d 1299, 1300 (11th Cir. 2001)

(quoting Haitian Refugee Ctr., Inc. v. Nelson, 872 F.2d 1555, 1561 (11th Cir. 1989)), abrogation

on other grounds recognized by Santiago-Lugo, 785 F.3d at 475 n.5.

**B.      Legal Framework for Evaluating a Motion to Dismiss for Failure to Exhaust Administrative Remedies**

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional

defense because exhaustion "ordinarily does not deal with the merits" of a particular cause of

action.  Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted).  Further, a judge

"may resolve factual questions" in instances where exhaustion of administrative remedies is a

defense before the court.  Id.  In these instances, "it is proper for a judge to consider facts outside

of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the

merits and the parties have sufficient opportunity to develop a record."  Id. at 1376.

A respondent may raise an inmate-petitioner's failure to exhaust as an affirmative

defense.  See Jones, 549 U.S. at 216; Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016);

Whatley I, 802 F.3d at 1209.  When so raised, "[respondents] bear the burden of proving that the

[petitioner] failed to exhaust his administrative remedies."  Pearson, 665 F. App'x at 867

(quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert

A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir.

2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d 1082.

In Turner, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss

for failure to exhaust administrative remedies.[7]  541 F.3d at 1082.  First, courts "look[] to the

---

[7]      Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner is no less applicable to a § 2241 proceeding. See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting § 2241's exhaustion requirements and Turner's application of exhaustion standards to a

11

factual allegations in the [respondent's] motion to dismiss and those in the [petitioner's] response, and if they conflict, takes the [petitioner's] version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018). This prong of the Turner test assesses whether there is a genuine dispute of material fact regarding the [petitioner's] failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the [petitioner's] allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, [respondent has] shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Once respondents have shown an administrative remedies procedure exists and the petitioner did not follow the procedure, the petitioner "bears the burden of proving the . . . procedure effectively was unavailable to him." Nuckles v. Yeager, Case No. 1:25-cv-00125, 2025 WL 1490057, at *4 (N.D. Ala. May 22, 2025) (referencing Geter v. Baldwin State Prison, 974 F.3d 1348, 1356 (11th Cir. 2020)).

---

§ 2241 petition); Blevins v. FCI Hazelton Warden, 819 F. App'x at 856 (11th Cir. 2020) (applying Turner in the § 2241 context).

Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record."). However, if the issue of exhaustion is "intertwined with the merits of a claim that falls under the Seventh Amendment," parties are entitled to a jury trial on that issue and dismissal is not appropriate. Perttu v. Richards, 605 U.S. 460, 468 (2025).

### C.    The BOP's Administrative Remedies Procedures

The BOP has established an administrative remedy procedure through which an inmate may seek review of an issue related to any aspect of his imprisonment. 28 C.F.R. § 542.10 *et seq*. The Administrative Remedy Program applies to all inmates incarcerated in penal institutions the BOP operates. Id. § 542.10(b). Under the applicable Regulations, an inmate must generally first seek to resolve an issue of concern informally by presenting the issue to correctional staff at the local facility ("BP-8"). Id. § 542.13(a). If this does not resolve the matter, an inmate must submit a formal written administrative remedy request to the Warden ("BP-9") within 20 calendar days of the incident giving rise to the administrative remedy request. Id. § 542.14(a). If unsatisfied with the Warden's response, an inmate may appeal with the Regional Director ("BP-10") within 20 days of the Warden's response. Id. § 542.15(a). If dissatisfied with the Regional Director's response, an inmate may take a final appeal ("BP-11") to the BOP's Central Office, Office of General Counsel in Washington, D.C., within 30 days of

when the Regional Director signed the response.  Id.  Appeal to the BOP's Central Office is the final step in the BOP's administrative remedy process.  Id.

An inmate must complete all the steps in the administrative remedies process to have exhausted his administrative remedies.  A submission at any of these levels can be rejected, with notice to the inmate why the submission was rejected and, if correctable, to allow the inmate a reasonable time for re-submission.  Id. § 542.17(b).  Additionally, if an inmate does not receive a response within the allotted time for response at any level, including any extensions, the inmate is to consider the lack of a response to be a denial at that level.  Id. § 542.18.  The BOP uses a system known as "SENTRY to log and track inmate [remedies requests] as they progress through the administrative remedy process."  Jackson v. Gabby, Case No. 3:23-cv-4674, 2024 WL 1515703, at *4 (N.D. Fla. Feb. 28, 2024).

### D.   Analysis of Balderas's Efforts at Exhaustion

Balderas freely admits he did not exhaust his administrative remedies prior to filing his § 2241 Petition.  Doc. 1 at 16–17; Doc. 9 at 1–2.  Thus, the parties' assertions do not create a genuine dispute as to Balderas's failure to exhaust his administrative remedies, and Balderas's Petition is due to be dismissed.  Accepting Balderas's assertion as true, which the Court must, the only conclusion is that Balderas did not properly exhaust his administrative remedies before he filed his Petition.  The Court, however, must address whether there is some reason Balderas was not required to exhaust administrative remedies.

In support of his Motion, Respondent submitted the declaration of McCall Young, an attorney-advisor with the BOP, and a printout of Balderas's SENTRY records.  Doc. 7-1 at 2–7, 17–20.  Ms. Young sets forth the BOP's administrative remedies procedure and notes that Balderas filed five administrative remedies relating to the claims he raises in his Petition.  Id. at

4.  Ms. Young also states that Balderas filed Remedy Number 1209596-F1 (BP-9) on August 19, 2024, relating to FSA credits.[8]  Ms. Young states that this remedy was denied and closed on September 16, 2024.  Id. & at 18.  Ms. Young further states that Balderas filed Remedy Number 1226009-F1 (BP-9) on January 22, 2025, concerning FSA credit, and this was rejected because Balderas had previously filed Remedy Number 1209596-F1 and raised the same ground.  Id. at 4, 18.  On March 20, 2025, Balderas submitted Number 1226009-R1 (BP-10), in which Balderas complained about FSA credits, and which was rejected because he did not properly file a BP-9.  Id. at 4, 19.  Balderas then filed Remedy Number 1226009-A1 (BP-11) on April 21, 2025, again complaining about FSA credit, and the Central Office noted this remedy was being rejected because it was filed at the wrong level and because Balderas had a previously filed BP-9 under Number 1209596-F1.  Id. at 4, 19.  Rather than correcting the reasons for his rejections for Remedy Number 1209596, Ms. Young states that Balderas submitted a new remedy at the institutional level, 1241788-F1, on May 23, 2025, the subject of which was FSA-PATTERN.  Id. at 4–5, 20.  As of June 13, 2025, the date Balderas's SENTRY record was printed, this new remedy was pending.  Id. at 20.

Balderas states in response that the remedy he submitted in January 2025, Remedy Number 1226009-F1, was incorrectly rejected based on the assumption he had already filed Remedy Number 1209596-F1 concerning the same issue.  Doc. 9 at 1 (citing Doc. 1-1 at 9).  When he did not receive a response based on his clarification attempt on January 27, 2025,

---

[8]      Administrative remedies filed at the BP-9 level (Warden) bear an "F" designation, at the BP-10 level (Regional) bear an "R" designation, and at the BP-11 (Central Office/General Counsel) bear an "A" designation.  See Doc. 7-1 at 3; see also Jackson v. Gabby, Case No. 3:23-cv-4674, 2024 WL 1515703, at *4 (N.D. Fla. Feb. 28, 2024).

15

Balderas states he submitted a BP-10 on March 13, 2025.  Id. (citing Doc. 1-1 at 14–18).

Balderas claims his efforts at exhaustion were improperly blocked at every level.  Id. at 2.

The submitted evidence demonstrates that a remedies process exists and that Balderas did not properly and fully complete the administrative remedies process for the claims he raises in his Petition prior to filing his Petition on May 22, 2025 (which is dated May 20, 2025).  Doc. 1 at 23.  The Court credits Balderas with having attempted to exhaust his administrative remedies prior to filing his Petition.  However, Balderas did not properly exhaust his administrative remedies prior to filing his Petition.  The Court notes Balderas submitted Remedy Number 1209596-F1 (BP-9) on August 14, 2024, and he asked for someone to "look into the calculations of my FSA time credit and explain why I'm only getting 10 days per 30-day period . . . ."  Doc. 1-1 at 4.  The Warden denied Remedy Number 1209596-F1 on September 16, 2024, and essentially informed Balderas that his time credits were properly calculated.  Id. at 5.  The Warden informed Balderas he could appeal the decision to the Regional Director (BP-10) within 20 days.  Id.  There is nothing of record showing that Balderas filed Remedy Number 1209596-R1 (which would have been an appeal at the Regional level) at any time thereafter, let alone within 20 days of the denial of his BP-9.  See Doc. 7-1 at 4.

Instead, Balderas filed Remedy Number 1226009-F1 (BP-9) on January 13, 2025, in which he asked that the BOP "recalculate my FSA credits and update my sentence computation sheet . . . ."  Doc. 1-1 at 7.  The Warden rejected this remedy on January 22, 2025, because Balderas previously filed a remedy at the BP-9 level and referenced Remedy Number 1209596-F1.  Id. at 9.  On January 27, 2025, Balderas attempted to clarify that Remedy Number 1209596-F1 concerned his receipt of 10 days a month when he should have been getting 15 days a month.  Id. at 11.  And with Remedy Number 1226009-F1, Balderas states that he said his "earned time

16

credits are incorrect according to the [FSA]." Id. & at 12. Balderas has presented evidence of a Post-It Note on the BP-9 stating: "previously filed." Id. at 13. Balderas then filed Remedy Number 1226009-R1 on March 13, 2025, again attempting to distinguish between his complaints over the two remedies and the non-response to Remedy Number 1226009-F1. Id. at 14–17. The Regional Office rejected Number 1226009-R1 because the Regional Office concurred with the rationale of the institution for rejection. The Regional Office also instructed Balderas to follow the directions provided on the prior rejection and informed him that he must *properly* file a BP-9 to proceed and that he did not have a previous remedy on file for this matter. Id. at 19. Balderas then filed Remedy Number 1226009-A1 on April 1, 2025, and stated he was appealing the wrongful rejection of his BP-9 and BP-10 and the failure to apply his earned time credits. Id. at 20–23. The Central Office rejected this remedy on April 21, 2025, and informed Balderas he submitted his appeal at the wrong level, a previous issue was filed under Remedy Number 1209596-F1, and he must file at a "lower level under identified corresponding remedy ID." Id. at 24. Respondent notes that Balderas should have filed a BP-10 for Remedy Number 1209596 at this time or when the Warden denied this remedy on September 16, 2024; instead, Balderas filed Remedy Number 1241788-F1 on May 23, 2025 (after he executed his Petition). Doc. 7-1 at 4–5 n.3. The abstract description for the remedy is "FSA-PATTERN." Id. at 20.

Balderas's attempt to distinguish the ground raised in Remedy Number 1209596 and in Remedy Number 1226009 does not show proper exhaustion. Through both remedies, Balderas sought proper calculation of his time credits under the FSA. And Balderas did not file any appeal at the Regional or Central Office levels (BP-10 or BP-11) regarding Remedy Number 1209596. And when Balderas was informed through Remedy Number 1226009 that he had previously filed a remedy concerning proper FSA credit calculation or did not properly file a

17

remedy at a lower level, he appealed these rejections and still sought FSA credit. Instead, Balderas filed another remedy, Remedy Number 1241788-F1 on May 23, 2025, the day after his Petition was docketed in this Court and three days after he executed his Petition. Doc. 1 at 23. Balderas's failure to complete the remedies process for Remedy Number 1209596 or to heed instructions for Remedy Number 1226009 does not show that the process was unavailable to him. Balderas did not properly exhaust the available administrative remedies prior to filing his Petition.[9] The Court, nevertheless, addresses Balderas's assertions that his exhaustion requirements should be excused.

Balderas argues that requiring him to exhaust would be futile because he should have already been transferred to pre-release custody. Doc. 1 at 17. Balderas specifically states, "Delaying relief to complete administrative process would cause irreparable harm as Petitioner is being held beyond his lawful eligibility date." Id. In addition, Balderas states that "[f]urther administrative attempts" would not change the BOP's determination against Balderas' challenges to his risk assessment score and time credits. Id. Balderas's argument is unconvincing. Balderas makes only cursory, unsupported futility arguments. Id. Balderas does not make any proper showing that: (1) requiring exhaustion would "occasion undue prejudice to subsequent assertion of a court action"; (2) there is any about whether the BOP is "empowered to grant effective relief"; or (3) the BOP is "biased or has otherwise predetermined the issue before it . . . ." See Shorter, 803 F. App'x at 336 (citing McCarthy, 503 U.S. at 146–48). Furthermore,

---

[9]       The Court recognizes that Balderas may contend that he received confusing responses for Remedy Number 1226009. However, BOP staff consistently informed Balderas during the remedies process for Number 1226009 that he had previously filed a request for the same complaint (FSA credit) and that is why his requests were rejected. Doc. 1-1 at 9 (noting previously filed and referencing Remedy Number 1209596-F1); id. at 13 (noting previously filed); id. at 19 (concurring with reason for rejection at institutional level and directing Balderas to file instructions provided on prior rejections); and id. at 24 (also noting previously filed and referencing Remedy Number 1209596-F1 and instructing to file at lower level).

Balderas has not shown that "extraordinary circumstances" support application of a futility exception in this case.  Jaimes, 168 F. App'x at 359 & n.4.

Balderas also asserts that exhaustion of administrative remedies is not required because the BOP rendered the process "functionally unavailable."  Doc. 9 at 2.  Balderas's argument is unavailing.  As noted above, exhaustion of administrative remedies must occur first in the agency setting to allow "the agency [to] develop the necessary factual background upon which decisions should be based" and to give "the agency a chance to discover and correct its own errors."  Green, 212 F. App'x at 871 (citation omitted).  Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Woodford, 548 U.S. at 93.  Balderas's argument here is contrary to established law.  Balderas has not shown that exhausting available administrative remedies served as a dead end, the process was opaque, or that he was thwarted from completing his administrative remedies, thus making the process unavailable.  See Blevins, 819 F. App'x at 856.  Balderas also fails to show that the BOP is legally incapable of granting any relief he could seek through the administrative remedies process.  Balderas wants the BOP to recalculate his credits because the BOP initially miscalculated his risk assessment level, see, e.g., doc. 1 at 14–15, which is squarely within the realm of relief the BOP could provide.

Respondent sufficiently demonstrates that Balderas did not properly exhaust available administrative remedies for his claims.  Thus, the Court should **GRANT** Respondent's Motion. The Court should dismiss without prejudice Balderas's claims as unexhausted.  It is unnecessary

19

to address the remaining grounds of Respondent's Motion.[10]  Holdago v. United States, Civil Action No.: 5:19-cv-9, 2019 WL 5681217, at *3 (S.D. Ga. Oct. 31, 2019) (finding it unnecessary to address alternative grounds in motion for dismissal where petitioner failed to exhaust his available administrative remedies), adopted by, 2019 WL 6353869 (S.D. Ga. Nov. 26, 2019).

### III.      Leave to Appeal *in Forma Pauperis*

The Court should also deny Balderas leave to appeal *in forma pauperis*.  Though Balderas has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[10]     This is not to say Balderas has not raised a cognizable claim under § 2241, only that Respondent did not show that this Court lacks jurisdiction to entertain Balderas's claim, and Balderas did not properly exhaust the available and necessary remedies process.

Given the above analysis of Balderas's Petition and Respondent's Motion to Dismiss and Balderas's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Respondent's Motion to Dismiss and **DISMISS without prejudice** Balderas's Petition based on his failure to exhaust his administrative remedies. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Balderas *in forma pauperis* status on appeal. I **GRANT** Balderas's Motion to Supplement. Doc. 11.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the

specificity requirement set out above will not be considered by the District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 3rd day of March, 2026.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA